[Crim. No. 417. Fourth Appellate District.—June 25, 1937.]

THE PEOPLE, Respondent, v. F. E. TAYLOR, Appellant.

Edgar G. Langford for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was accused of the crime of grand theft, it being charged that he took the property of one Mary A. Colver consisting of a promissory note for $6,103.88 and a mortgage securing the same. He was found

guilty by the court sitting without a jury, and has appealed from the judgment.

It developed at the trial that the defendant learned that Mrs. Colver owned this note and mortgage and approached her with a proposition of buying them. Mrs. Colver informed him that she would make no agreement with him except through her lawyer. The defendant, after having made an appointment, took Mrs. Colver to this attorney's office on November 4, 1936.

This attorney testified that the two came to his office on that day; that the defendant told him he had arranged with Mrs. Colver to buy the note and that he proposed to pay $4,000 for it by giving his personal note payable at the rate of $50 per month, the entire amount to be paid within one year and this note to be secured by a trust deed on property near Mojave; that he told the defendant they would not accept this security; that thereupon the defendant said he would give as security for his note 1,000 shares of stock in the "Sunshine Mining Company"; that the defendant stated that this stock was listed on the New York Curb Exchange, that so far that year he had received $2,500 in dividends from this stock, and that in December he would receive a dividend of another $4,000 and would then pay his note to Mrs. Colver in full; that the defendant asked him to phone to E. F. Hutton & Company and get a quotation on this stock; that in their presence he phoned this company and was told that this stock was worth $19 and a fraction per share; that he reported this to Mrs. Colver and the defendant; that he then advised Mrs. Colver that he thought the security was sufficient and she instructed him to prepare the necessary papers; that they returned to his office that afternoon and he told them that he had again phoned the broker and had been told that this stock had been selling at about $20 per share; that he told the defendant it seemed foolish to put up $20,000 of security to secure a $4,000 note and suggested that he sell 200 shares of the stock and pay Mrs. Colver in cash; that the defendant refused to do this, saying he did not want to lose the dividend that was coming in December; that Mrs. Colver then signed certain papers and the defendant said he would return in a couple of days, with the stock certificate, and complete the transaction; that the defendant returned on November 6th and signed the note which the

witness had prepared, which note recited that 1,000 shares of stock in the ''Sunshine Mining Company'' was being deposited as security therefor; that when the defendant produced the certificate of stock the witness noticed that the name thereon was ''Sunshine Mining Company, Ltd.''; that he called the defendant's attention to this word ''Ltd.'' and the defendant assured him that this was the same stock that he had told them about two days before, that the stock was listed on the New York Curb, and that it was the same stock on which he had received the dividend; that he asked the defendant ''Is there any chance of confusion in the name?'' and the defendant replied: ''No, there is only one company. That is the one I was telling you about;'' and that the defendant signed an assignment of the stock and he delivered to him the note and mortgage. Mrs. Colver gave substantially the same testimony as to what occurred on November 4th.

It appears from the evidence that a subsequent investigation disclosed that the ''Sunshine Mining Company'' was a Washington corporation, that this stock was listed on the New York Curb Exchange and was worth about $20 a share, that the ''Sunshine Mining Company, Ltd.'', shares in which were turned over by the defendant, was an Idaho corporation which had never paid any dividends, and that this stock was practically valueless and was not listed on the New York Curb Exchange.

The secretary-treasurer of the Sunshine Mining Company, Ltd., was called as a witness and gave the facts respecting that company. He also produced letters which had been written to him by the defendant and by him to the defendant. In several of these letters he told the defendant that stock in the Sunshine Mining Company, Ltd., had no market value. In one letter the defendant wrote to this witness suggesting that he could get a party to trade some lots for stock in this corporation and suggested that the witness assist him in this transaction. The witness replied in a letter to the defendant ''I, personally, do not care to be involved in a trade of this character, for I do not consider the Sunshine stock worth anything at this time. While the company owns a group of undeveloped claims which shows some promise, yet it is not in a financial condition to develop the same, and sufficient revenue could not be raised by assessing the stockholders to carry on the necessary development program'' and, further,

"in dealing with this stock it should be made clear, of course, that the Sunshine Mining Company, Ltd., is not the Sunshine Mining Company, which recently has received so much attention in the mining press. The latter company is a Washington corporation and owns a very valuable silver mine in this county. Its stock is now quoted at about $22 per share."

At the close of the People's case defendant's counsel moved to dismiss the action. While this motion was being argued defendant's counsel asked for a recess, which was granted. A conversation took place between the defendant and his counsel during the recess and when the court reconvened his counsel stated that they did not wish to put on any testimony and that they wished to change the plea from not guilty to guilty. The court asked the defendant if this was true and was told it was. Thereupon the court rearraigned the defendant and, in response to questions by the court, the defendant personally withdrew his plea of not guilty and entered a plea of guilty. The defendant then asked for probation and the matter was referred to the probation officer for investigation and report. Subsequently through other counsel, the defendant moved for leave to withdraw his plea of guilty and for permission to again enter a plea of not guilty. After hearing a great deal of evidence thereon, this motion was denied. The application for probation was also denied and the judgment from which this appeal is taken was pronounced.

The sole ground of the appeal is that the court abused its discretion in denying the defendant's motion to withdraw his plea of guilty and to interpose a plea of not guilty. In support thereof it is argued, first, that the evidence is of such a character as to give rise to a reasonable probability of his acquittal if again allowed to stand trial and, second, that the evidence presented on the hearing of the motion to change his plea establishes the fact that the former entry of a plea of guilty was the result of excusable mistake and inadvertence upon his part.

It is not argued, and could not well be argued, that the evidence is not sufficient to sustain the judgment. The defendant was represented at the trial by counsel of well-known ability and experience. The motion for permission to change his plea was presented by a different attorney. This appeal is now presented by still another lawyer who came

into the case after the appeal was taken. While this attorney asserts his belief in the innocence of the defendant it is not even intimated that any evidence could be produced which would tend to show that the misrepresentations were not made by the defendant, that the things he represented were in fact true, that the stock he delivered as security for the note was, in fact, of any value, or that he did not fully know and understand the difference between the stock he produced and the stock he described and claimed to have. Whether or not the defendant intended to eventually pay the note which he gave in exchange for the other note and mortgage, the other party to the transaction was entitled to the security agreed upon. The argument now made may be boiled down to the contention that the testimony of the attorney for Mrs. Colver is not to be believed because it must be concluded from the testimony of another witness that throughout the transaction this attorney knew and understood that stock in the Sunshine Mining Company, Ltd., was distinct and different from stock in Sunshine Mining Company. The witness just referred to was a clerk in the office of E. F. Hutton & Company. He testified that on November 4, 1936, he received a telephoned inquiry from this attorney as to a quotation on stock of the Sunshine Mining Company, that in response to the inquiry he obtained the information and gave it to the attorney, that the highest was twenty and five-eighths and the lowest nineteen and five-eighths, that these figures were for November 6th and were received by him on November 7th, that he believed this quotation was the only one he got from New York, that he had two inquiries from this attorney, that he could not recall the exact dates, and that he believed the attorney asked about "the limited company" the first time and that he got a quotation on the Sunshine Mining Company after trying to get a quotation for him on the Sunshine Mining Company, Ltd.

While a part of the testimony of this witness might be taken as meaning that the attorney first asked about "the limited company" his entire testimony indicates the contrary. He said frankly he could not remember the dates, and he qualified nearly all his material statements with "I think" and "I believe". He stated that he thought he gave to the attorney on November 4th certain information which he says he did not receive until November 7th. It is apparent, as seems perfectly natural, that in testifying months later he

was uncertain both as to the dates and as to the order in which things had been said and done. Under the circumstances, and without any reflection on either witness, the court was justified in believing the testimony of the attorney as to what occurred, and the entire transaction was such that it is almost impossible to believe that this attorney understood that there were two companies with names so similar, at the time the deal was closed. We have read the entire record and we are unable to see, in spite of a possible conflict in this part of the evidence, how any trial judge could have conscientiously thought that the defendant was not guilty.

■ Nor do we think the evidence presented on the last motion for permission to change his plea was sufficient to establish that the previous change of plea occurred as the result of excusable mistake and inadvertence on the part of the defendant. It is argued that the idea of pleading guilty did not originate with the defendant and "that it was only after he had become sick in body and mind that he succumbed to the threats and importunities of" his then counsel and changed his plea from not guilty to guilty. The record neither supports the unwarranted attack now made upon the defendant's former counsel nor the contention now made. In his affidavit the defendant stated that when his attorney talked to him, during the recess above referred to, he was in a state of confusion, that he had been sick, that he was in a highly nervous and upset condition, and that he gave his consent to the change of plea "in his confused state, and inadvertently and under the assurance of his counsel that he would be given straight probation". A great deal of evidence was taken at the hearing, including the testimony of his former counsel, and the record amply supports the action of the trial court in refusing permission to again change the plea. The defendant changed his plea to one of guilty after evidence unquestionably showing his guilt had been produced in court, after talking the matter over with his attorney and after being carefully questioned by the trial judge. The motion later made to again change the plea was given a full and fair hearing, and no evidence was produced justifying the inference that the defendant had been in any manner coerced or improperly induced to change his plea, or indicating that he had not thoroughly understood what he was doing when the change was made.

No abuse of discretion appears, and the judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.